# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| ACCIDENT INSURANCE CO., )<br>  Plaintiff, )<br> )<br> v. )<br> )<br>MATHEWS DEVELOPMENT )<br>CO., LLC, *et al.*, )<br>  Defendants. ) | CASE NO. 2:19-cv-848-MHT<br>(WO) |

## ORDER ON PRETRIAL HEARING

A pretrial hearing was held in this case on July 20, 2022, wherein the following proceedings were held and actions taken:

1. **PARTIES AND TRIAL COUNSEL:**

F. Lane Finch, Jr. – Trial Counsel for Plaintiff Accident Insurance Company ("AIC").

Patrick L. W. Sefton – Trial Counsel for Defendants Mathews Development Co., LLC and James E. Mathews (collectively "Mathews Development").

Edward and Ruth Thomas – Pro Se Defendants

2. **JURISDICTION AND VENUE:**

This declaratory judgment action is brought pursuant to 28 USC Sec. 2201 and seeks a declaration of the rights and obligations of AIC under a General Liability Policy issued to Mathews Development.

This Court has jurisdiction pursuant to 28 USC Sec. 1332 because the citizenship of AIC is diverse from that of each defendant and the amount in controversy exceeds $75,000 exclusive of interest and costs.

Venue is proper pursuant to 28 USC Sec. 1391(b)(2) because the policy was issued to Mathews Development in Montgomery, Alabama. There is a current controversy between the parties regarding AIC's duty to defend and/or indemnify the Mathews Defendants for a lawsuit filed against them in the Circuit Court of Montgomery County, Alabama, by Edward and Ruth Thomas. When the case was initially filed there was also a controversy regarding AIC's duty to defend and/or indemnify the Mathews Defendants for two lawsuits filed against them in the Circuit Court of Montgomery by Courtney Jordan and Sheretha and Kelvin Wortham. The Court has been informed by the parties that those controversies are now moot and will not be considered at trial. A substantial part of the relevant actions in connection with this complaint took place within this district. Venue is also proper pursuant to 28 USC Sec. 1391(b)(1) because Mathews Development maintains its principal office in Montgomery, Alabama, and Mathews Development's only member resides in Montgomery County, Alabama. And the Thomases reside in Montgomery County, Alabama.

3. **PLEADINGS:**

The following pleadings and amendments were allowed:

Complaint for Declaratory Action. Doc. 1.

Answer and Counterclaim by the Mathews Defendants. Doc. 42.

Answer by the Thomases. Doc. 44.

**4.      CONTENTIONS OF THE PARTIES:**

**(a)      The plaintiff(s)**

The Thomases purchased a house from Mathews Development in 2017. At some point in time, they allegedly noticed property damage caused by Mathews Development's construction. Neither they nor Mathews Development have evidence as to when the property damage occurred.

Mathews Development built 100+ tract homes in the Stone Park subdivision of Pike Road. Mathews Development admits that "generally the homes it had built in the Stone Park neighborhood shared similar characteristics, such as floor plans, interior designs, exterior designs and layouts with other homes it built in the subdivision . . . ." Response to Req. for Admission No. 25. The homes were all built for Mathews Development by independent contractors. Mathews Development did not have written indemnity agreements with any of the independent contractors and did not obtain from any of the independent contractors' certificates of insurance showing Mathews Development was named as an additional insured on the independent contractors' insurance policies.

AIC issued a series of insurance policies to Mathews Development. The last policy was cancelled effective July 28, 2017. Each policy contained three provisions which now bar coverage.

First, the "insurance applies to 'bodily injury' and 'property damage' only if . . . [t]he 'bodily injury' or 'property damage' occurs during the policy period." There is no evidence the Thomases suffered "bodily injury" or "property damage" before the July 28, 2017 cancellation date.

Second, there were several "special conditions" which had to be met before there was coverage under the Policy:

> As a condition precedent to coverage for any claim for injury or damage based, in whole or in part, upon work performed by independent contractors, the insured must have, prior to the start of work and the date of the "occurrence" giving rise to the claim or "suit:"
>
> **(1)** Received a written indemnity agreement from the independent contractor . . . ;
>
> **(2)** Obtained certificates of insurance from the independent contractor indicating that the insured is named as an additional insured . . . ;
>
> . . . .
>
> The insured must maintain the records evidencing compliance with paragraphs **(1)** through **(4)** above for a minimum of five years from the expiration date of this policy. If coverage indicated under **(2)** and **(3)** above are not maintained, we shall have no obligation to defend or indemnify any insured for work performed by independent contractors on your behalf represented by the certificates of insurance referenced in **(2)** and **(3)** above.
>
> The insurance provided by this policy shall be excess over and above any other valid collectible insurance available to the insured under paragraph **(2)**.

Mathews Development did not obtain written indemnity agreements from any of its independent contractors. It also did not obtain certificates of insurance from any of the independent contractors indicating Mathews Development was named as an additional insured. Therefore, Mathews Development cannot prove two conditions precedent to coverage.

>  Third, the Policy excluded coverage for tract housing construction:
>
>  This insurance does not apply to:
>
>  > . . . .
>  >
>  > **Tract Housing Construction**
>  >
>  > "Bodily injury", [or] "property damage" however caused, arising, directly or indirectly, out of, or related to an insured's or an insured's sub-contractor's operations, "your work" or "your product" that is performed on or incorporated into a "tract housing project or development."
>  >
>  > . . . .
>
>  As used in this endorsement, the following is added to SECTION V - DEFINITIONS:
>
>  "Tract housing" or "tract housing project or development" means any housing project or development that will exceed 25 total units when the project is completed and where the homes share many of the same characteristics including floor plan, design or lay-out.

Mathews Development built at least 100 homes in the Stone Park Development and the homes in Stone Park share many of the same characteristics including floor plan, design or lay-out.

5

    **(b)**     **The defendant(s)**

        **1.**     **Mathews Development**

The Thomases purchased their home from Mathews Development on April 25, 2017 which is within the policy period. Their Complaint alleges water damage problems, improper installation of doors and granite, slab foundation problems and other issues. The Thomases also complained about a water leak in May of 2017 which is within the policy period. While Mathews Development does not admit any liability it contends the nature of the property damage alleged by the Thomases would have been evident at or within a short time of moving in their home and within the policy period which triggers coverage for property damage occurring during the policy period. In their underlying Complaint, which Mathews Development and Mathews have asked AIC to defend, the Thomases' allege mental anguish damages which have been construed as a form of bodily injury under Alabama law.

To the extent AIC seeks to enforce any exclusion, it bears the burden of proving the applicability of any policy exclusion at trial and the Mathews Defendants contend that the exclusions relied upon by AIC either do not apply or are ambiguous. For example, the tract housing exclusion that Plaintiff relies upon states in pertinent part, as follows:

> "tract housing" or "tract housing project or development" means any housing project or development that will exceed 25 total units when the project is completed and where the homes share many of the same characteristics including floor plan, design or lay out."

Mathews Development contends this provision is ambiguous because it can be interpreted in at least two possible ways. One interpretation is that coverage is excluded if the insured builds more than twenty-five (25) houses in the neighborhood, which share many of the same characteristics versus coverage being excluded only if there are more than twenty-five (25) houses in the neighborhood and <u>all</u> the homes in the neighborhood must share the same characteristics including floor plan, design or layout. Mathews Development submits that because there is an ambiguity, the Court should construe the policy provision to the one outcome most favorable to the insured. The most reasonable reading of the exclusion and the one most favorable to the Mathews Defendants is that there must be more than twenty-five (25) homes and <u>all</u> the homes in the neighborhood must share the same characteristics including floor plan, design or layout. While the neighborhood contains more than twenty-five units, Mathews Development utilized twelve to fifteen different house plans for the homes it constructed. Mathews Development would allow its customers to make modifications to the house plans resulting in some of the homes being "semi-custom." Additionally, Mathews Development's customers, while using some of the company's plans, could and did make modifications by making certain rooms larger or adding square footage thereby making the house different or unique. Mathews contends the homes the company built had differing numbers of bedrooms and square footage. Mathews Development

7

did not build all the homes in the neighborhood. In fact, there were five other builders. Plaintiff has not offered evidence from the other builders reflecting differences in floor plan, design and layout among the other homes built by them. Mathews never used the other builders' plans. Each builder had different roof pitches. There were three different lot sizes in the neighborhood and, depending on the lot size, the location of the garage could differ. Because Plaintiff cannot prove that all the homes in the neighborhood share the same characteristics (and they do not) including floor plan, design or layout the exclusion should not operate to disclaim coverage.

Mathews Development anticipates that Plaintiff will rely upon the contractors special conditions provision to disclaim its duty to defend. Mathews contends this exclusion does not apply to disclaim all coverage because the exclusion only applies to exclude coverage for work injury or damage based in whole or in part upon work performed by independent contractors. As Mathews Development reads the allegations of Plaintiff's Complaint, the underlying Plaintiffs are asserting torts not dependent on work performed by independent contractors. For example, the Thomas Complaint makes allegations against all Defendants for negligent hiring, training and supervision. They also make allegations against all Defendants related to their examination of the site. Finally, the Complaint makes allegations about negligent and innocent misrepresentations and suppression.

This Court has previously held that a cause of action for suppression during the policy period is an occurrence sufficient to trigger the duty to defend. All certain allegations of the Thomas Complaint are not necessarily dependent upon the work of independent contractors. The contractors special condition endorsement is not dispositive of coverage.

Mathews Development contends that the Plaintiff does, in fact, have a duty to defend the underlying case brought by Ruth and Edward Thomas, pending in the Circuit Court of Montgomery County, Alabama. Under the terms and conditions of the policy issued by the Plaintiff, any ambiguities in the subject policy issued by Plaintiff should be construed against Plaintiff in favor of coverage, because the duty to defend is broader than the duty to indemnify and, therefore, Plaintiff is obligated to defend the underlying claims.

    **2.**    **The Thomases**

[NO INPUT OFFERED BY THOMASES]

**5.**    **STIPULATIONS BY AND BETWEEN THE PARTIES:**

    **1.**    The last insurance policy issued by AIC to Mathews Development was canceled on July 28, 2017.

    **2.**    The last policy contained the following Insuring Agreement:

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . .

    . . . .

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" . . .; [and]

        **(2)** The "bodily injury" or "property damage" occurs during the policy period;

. . . .

    **3.** The last policy contained the following Contractors Special Conditions Endorsement:

**CONTRACTORS SPECIAL CONDITIONS**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**:

    **Contractors**

As a condition precedent to coverage for any claim for injury or damage based, in whole or in part, upon work performed by independent contractors, the insured must have, prior to the start of work and the date of the "occurrence" giving rise to the claim or "suit:"

**(1)** Received a written indemnity agreement from the independent contractor . . . ;

**(2)** Obtained certificates of insurance from the independent contractor indicating that the insured is named as an additional insured . . . ;

**(3)** Obtained proof that the independent contractor has workers compensation insurance . . . ; and

**(4)** Obtained proof that all licenses as required by local and/or state statute, regulation or ordinance are up to date.

The insured must maintain the records evidencing compliance with paragraphs **(1)** through **(4)** above for a minimum of five years from the expiration date of this policy. If coverage indicated under **(2)** and **(3)** above are not maintained, we shall have no obligation to defend or indemnify any insured for work performed by independent contractors on your behalf represented by the certificates of insurance referenced in **(2)** and **(3)** above.

The insurance provided by this policy shall be excess over and above any other valid collectible insurance available to the insured under paragraph **(2)**.

**4.**     The last policy contained the following Tract Housing Exclusion:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to SECTION I- COVERAGES, paragraph 2. Exclusions of COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY and paragraph 2. Exclusions of COVERAGE B. PERSONAL AND ADVERTISING LIABILITY:

This insurance does not apply to:

> . . . .
>
> **Tract Housing Construction**
>
> "Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of, or related to an insured's or an insured's sub-contractor's operations, "your work" or "your product" that is performed on or incorporated into a "tract housing project or development."
>
> This exclusion does not apply if "your work" or "your product" is performed on or incorporated into the "tract housing or development" after it has been completed and certified for occupancy, unless "your work" or "your product" is to repair or replace "your work" or "your product" was performed on or incorporated into that project or development prior to its completion and certification for occupancy.

As used in this endorsement, the following is added to SECTION V - DEFINITIONS:

11

"Tract housing" or "tract housing project or development" means any housing project or development that will exceed 25 total units when the project is completed and where the homes share many of the same characteristics including floor plan, design or lay-out.

5. Edward and Ruth Thomas purchased their home, located in the development, from Mathews Development in 2017.

6. Mathews Development built more than 25 houses which share many of the same characteristics.

7. All of the construction on the houses Mathews Development built in Stone Park was performed by independent contractors.

8. Mathews Development did not have written indemnity agreements with any of the independent contractors.

9. Mathews Development did not maintain records evidencing a written indemnity agreement between it and any of the subcontractors who performed work on the subject houses.

***

It is ORDERED that:

(1) The non-jury trial of this cause, which is to last two days, is set for September 12, 2022, at 10:00 a.m. at the United States Courthouse in Montgomery, Alabama;

(2) A trial docket will be mailed to counsel for

each party approximately two weeks prior to the start of the trial term;

(3) Trial briefs are to be filed by August 29, 2022;

(4) Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the exhibit list and a sufficient number of copies of each photostatically reproducible exhibit for opposing counsel, the courtroom deputy clerk, the law clerk, and the judge to each have a set of the exhibits;

(5) All deadlines not otherwise affected by this order will remain as set forth in the uniform scheduling order (Doc. 47) entered by the court on May 17, 2021; and

(6) All understandings, agreements, deadlines, and stipulations contained in this pretrial order shall be binding on all parties unless this order be hereafter modified by order of the court.

DONE, this the 21st day of July, 2022.

                                   /s/ Myron H. Thompson
                                 **UNITED STATES DISTRICT JUDGE**