IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ACCIDENT INSURANCE CO., INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:19-cv-848-RAH |
| ) | [WO] |
| MATHEWS DEVELOPMENT ) | |
| COMPANY, LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

### **I. INTRODUCTION**

In this declaratory judgment action, Plaintiff Accident Insurance Co., Inc. (AIC) asks the Court to declare that there is no duty to defend Defendant Mathews Development Company, LLC in an underlying state court action involving the faulty construction of a residential home in a planned subdivision called Stone Park.

Before the Court is AIC's motion for summary judgment. (Doc. 115.) The motion has been fully briefed and is ripe for resolution. Because AIC's insurance policies do not require AIC to provide a defense to Mathews in these circumstances, AIC's motion is due to be granted.

### **II. BACKGROUND**

#### **A. The Underlying Lawsuit**

Mathews was one of six new home builders in the Stone Creek subdivision located just outside Montgomery, Alabama. At completion, Stone Creek consisted of over 400 single family homes. Mathews built over 100 of them and had five to ten homes under construction at any one time.

1

In 2015, Mathews built and sold a home to Edward and Ruth Thomas in Stone Park. Subcontractors performed all the construction work. Almost immediately upon completion, the Thomases observed problems with the home, primarily with the foundation, HVAC system, doors, and countertops.

On April 11, 2019, the Thomases filed suit against Mathews in the Circuit Court of Montgomery County, Alabama.[1] In their state court complaint, they alleged that they "began having some issues with the home about which they notified the Mathews Defendants and requested these items be fixed." (Doc. 1 at 7.) They further alleged that their home "had and continues to have foundation cracking problems due to the home not being properly constructed[.]" (*Id*.) The Thomases sought damages for the devaluation of their home, loss of the use and enjoyment of the home, extreme mental anguish and emotional distress, and "incidental and consequential damages associated with . . . water drainage problems, cracking in the floors and walls, issues relating to the heating and air systems, improper installation of interior doors, incorrect installation of kitchen granite countertops, and many other issues." (*Id*.)

The Thomases' state court complaint asserted claims for breach of warranty, negligence, wantonness, fraudulent misrepresentation, breach of contract, breach of implied warranty, fraud and suppression, unjust enrichment, conspiracy, and negligent hiring, training, or supervision. (*Id.* at 7–8.)

**B. The Insurance Policies**

AIC issued commercial general liability (CGL) policies to Mathews from 2010 until 2017. Pertinent to the issues in this action, there are no significant

---

[1] The Thomases also sued Jim Mathews, who is affiliated with Mathews Development Company, LLC. For the purposes of this order, the Court will refer to both Jim Mathews and Mathews Development Company, LLC as "Mathews" and will assume both are insureds under the AIC policies.

differences between the policies. Each policy contained two types of endorsements that are at issue here.

First, the policies contained a special condition endorsement that required Mathews to obtain written indemnification agreements and certificates of insurance from its subcontractors as a condition of coverage under the policies:

> "The Policy is modified by an endorsement that adds the following special condition:
>
> As a condition precedent to coverage for any claim for injury or damage based, in whole or in part, upon work performed by independent contractors, the insured must have, prior to the start of work and the date of the 'occurrence' giving rise to the claim or 'suit:'
>
> (1) Received a written indemnity agreement from the independent contractor . . . ;
>
> (2) Obtained certificates of insurance from the independent contractor indicating that the insured is named as an additional insured . . . ;
>
> (3) Obtained proof that the independent contractor has workers compensation insurance . . . ; and
>
> (4) Obtained proof that all licenses as required by local and/or state statute, regulation or ordinance are up to date.
>
> The insured must maintain the records evidencing compliance with paragraphs (1) through (4) above for a minimum of five years from the expiration date of this policy. If coverage indicated under (2) and (3) above are not maintained, we shall have no obligation to defend or indemnify any insured for work performed by independent contractors on your behalf represented by the certificates of insurance referenced in (2) and (3) above.

> The insurance provided by this policy shall be excess over and above any other valid collectible insurance available to the insured under paragraph (2)."

(Doc. 54-1 at 53; Form AIC 3007.) Mathews admits that it did not obtain indemnification agreements or certificates of insurance from its subcontractors. It reasons that it would have been unable to locate and hire subcontractors had it impressed these requirements upon them.

Second, the policies contained an endorsement excluding coverage for claims related to tract housing construction. That endorsement, also called a CATT Exclusion, provided that:

> "This insurance does not apply to:
>
> . . . .
>
> 'Bodily injury', 'property damage' or 'personal and advertising injury', however caused, arising, directly or indirectly, out of, or related to an insured's or an insured's sub-contractor's operations, 'your work' or 'your product' that is performed on or incorporated into a 'tract housing project or development.'
>
> This exclusion does not apply if 'your work' or 'your product' is performed on or incorporated into the 'tract housing or development' after it has been completed and certified for occupancy, unless 'your work' or 'your product' is to repair or replace 'your work or 'your product' was performed on or incorporated into that project or development prior to its completion and certification for occupancy.
>
> As used in this endorsement, the following is added to SECTION V - DEFINITIONS:
>
> 'Tract housing' or 'tract housing project or development' means any housing project or development that will

4

>> exceed 25 total units when the project is completed and where the homes share many of the same characteristics including floor plan, design or lay-out."

(Doc. 54-1 at 56; Form AIC 3011.)

### III. LEGAL STANDARD

Summary judgment is properly granted where there is no genuine dispute regarding a material fact. Fed. R. Civ. P. 56(a). The court must review the record, and all factual inferences, in the light most favorable to the nonmoving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). Summary judgment is a particularly appropriate vehicle to determine insurance coverage because the interpretation of a written contract is a question of law for the court. *See Tech. Coating Applicator, Inc. v. U.S. Fid. and Guar. Co.,* 157 F.3d 843, 844 (11th Cir. 1998).

Sitting in diversity, as in this case, and considering state-law contract claims, a federal court must apply the substantive law of the forum state. *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 412 F.3d 1224, 1227 (11th Cir. 2005); *Shaps v. Provident Life & Accident Ins. Co.*, 244 F.3d 876, 881 (11th Cir. 2001). Under Alabama's choice of law rules, "a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction." *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991). For insurance policies, the state in which the policy was issued and delivered is the state in which the contract was formed. *Cherokee Ins. Co., Inc. v. Sanches*, 975 So. 2d 287, 293 (Ala. 2007).

The AIC insurance policies at issue in this case were issued in Alabama. Therefore, Alabama's substantive law applies.

Under Alabama law, an insurance policy must be construed in accordance with the plain language of the policy. "Where there is no ambiguity in the terms of

an insurance [policy], the language must be enforced as written, and courts cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties[.]" *St. Paul Fire & Marine Ins. Co. v. Britt*, 203 So. 3d 804, 814 (Ala. 2016) (quoting *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 806 (Ala. 2002)). However, "[e]xclusions are to be interpreted as narrowly as possible, so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company that drafted and issued the policy." *Cincinnati Ins. Co. v. Lee Anesthesia, P.C.*, 641 So. 2d 247, 249 (Ala. 1994).

Further, under Alabama law, while it is the insured's burden to establish coverage by showing that a claim potentially falls within the policy, *Nationwide Mut. Fire Ins. Co. v. David Grp., Inc.*, 294 So. 3d 732, 737 (Ala. 2019), "[i]f the question involves the application of an exclusion or an assertion that the policy does not apply for some reason other than the scope of coverage, the burden is on the carrier." *Am. Safety Indem. Co. v. T.H. Taylor, Inc.*, 513 F. App'x 807, 813 (11th Cir. 2013).

Sometimes there exists an ambiguity within the policy. An ambiguous provision is one that is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage. *FabArc Steel Supply, Inc. v. Composite Constr. Sys., Inc.*, 914 So. 2d 344, 357 (Ala. 2005). If the policy is ambiguous, then the ambiguous provision must be construed in favor of the insured and against the insurer who drafted the policy. *Id.* at 357–58. Simply because a provision is complex and requires analysis for application, it is not automatically rendered ambiguous. The Court will read each policy as a whole, endeavoring to give every provision its full meaning and operative effect. *See id.* at 358.

## IV. DISCUSSION

"Liability insurance coverage includes two separate duties: (1) the duty to defend; and (2) the duty to indemnify." *Tanner v. State Farm Fire & Cas. Co.*, 874

So. 2d 1058, 1063 (Ala. 2003). Under Alabama law, an insurer's duty to defend is generally broader than its duty to indemnify. *See Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank,* 928 So. 2d 1006, 1009 (Ala. 2005). "Whether an insurance company owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in the complaint." *Tanner,* 874 So. 2d at 1063; *see also Ajdarodini v. State Auto Mut. Ins. Co.,* 628 So. 2d 312, 313 (Ala. 1993) ("An insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the action against the insured."). However, the Alabama Supreme Court "has rejected the argument that the insurer's obligation to defend must be determined solely from the facts alleged in the complaint in the action against the insured." *Hartford Cas. Ins. Co.,* 928 So. 2d at 1010 (quoting *Ladner & Co., Inc. v. S. Guar. Ins. Co.,* 347 So. 2d 100, 103 (Ala. 1977)). In deciding whether the complaint alleges a triggering accident or occurrence, "the court is not limited to the bare allegations of the complaint in the action against insured but may also look to facts which may be proved by admissible evidence in a suit for declaratory relief[.]" *Pac. Indem. Co. v. Run-A-Ford Co.,* 161 So. 789, 795 (Ala. 1964). However, limitations do exist as to how far beyond the allegations in a complaint a court may go. *See Encompass Ins. Co. of Am. v. De Graft Hayford Yankah*, No. 1:06-cv-337, 2007 WL 9717755, at *2 (S.D. Ala. Jan. 16, 2007); *Canal Ins. Co. v. M&G Tank Lines, Inc.*, No. 00-183, 2001 WL 530450, at *3 (S.D. Ala. May 9, 2001) (quoting *Sentry Ins. Co. v. Miller*, 914 F. Supp. 496, 500 (M.D. Ala. 1996)).

AIC makes several arguments in support of its summary judgment motion on its duty to defend claim. Two of them are dispositive, so the other arguments will not be considered.

## A. Conditions Precedent

AIC contends that it has no duty to cover, defend, or indemnify Mathews because Mathews failed to satisfy certain conditions precedent.[2] Specifically, according to AIC, Mathews failed to obtain the following from each of its subcontractors on the project, at least from those subcontractors whose work is made the basis of the Thomases' claims: (1) certificates of insurance identifying Mathews as an additional insured on the subcontractors' insurance policies; and (2) written indemnity agreements from the subcontractors.

Special condition endorsements similar to but not precisely the same as the ones at issue have been found to constitute conditions precedent to coverage, defense and indemnification. *See, e.g., Certain Interested Underwriters at Lloyd's, London v. Halikoytakis,* 444 F. App'x 328 (11th Cir. 2011). And when the insured does not comply with the special condition, courts have found that the insured was not entitled to a defense or indemnity for any claim brought against the insured for work by subcontractors falling under the endorsement. *See, e.g, Sharp Gen. Contractors, Inc. v. Mt. Hawley Ins. Co.*, 604 F. Supp. 2d 1360 (S.D. Fla. 2009); *Scottsdale Ins. Co. v. Essex Ins. Co.*, 98 Cal. App. 4th 86 (2002); *Probuilders Specialty Ins. Co. v. Phoenix Cont., Inc.*, 743 F. App'x 876, 877 (9th Cir. 2018) (Mem.). The purpose for such provisions is obvious: to minimize the transfer of risk for faulty work from the subcontractor to the builder or general contractor.

The plain wording of the AIC policies provides in the special conditions endorsement that AIC will not cover, defend, or indemnify Mathews for claims based in whole or in part on the work of Mathews' subcontractors unless all the conditions precedent have been fulfilled, including Mathews' acquisition of certificates of insurance and written indemnification agreements from its

---

[2] The Court will track the language in the endorsement as it concerns the words coverage, defend, and indemnify.

8

subcontractors. As that provision provides, "[a]s a condition precedent to coverage for any claim for injury or damage based, *in whole or in part*, upon work performed by independent contractors, the insured must have, prior to the start of work and the date of the 'occurrence' giving rise to the claim or 'suit:' . . . (1) Received a written indemnity agreement from the independent contractor . . . ; [and] (2) Obtained certificates of insurance from the independent contractor indicating that the insured is named as an additional insured[.]" The policy further provides that "[i]f coverage indicated under (2) and (3) above are not maintained, [AIC] shall have no obligation to defend or indemnify any insured for work performed by independent contractors on your behalf."

Mathews does not dispute that the Thomases' home was constructed through the efforts of subcontractors and that it failed to obtain written indemnification agreements and certificates of insurance from its subcontractors. Mathews also does not dispute that the Thomases are largely suing Mathews for the work of its subcontractors. As such, it cannot generally be disputed that AIC is under no obligation to defend Mathews for the work of the subcontractors.

Mathews instead argues there is an obligation to defend because the Thomases also allege that Mathews was negligent and wanton in the supervision of its subcontractors and the overall construction of the Thomas home. As the Thomases' Complaint alleges, Mathews was guilty of negligent hiring, training, and supervision because "Defendants had a duty to ensure that their agents, employees and/or contractors were properly trained and supervised regarding the construction of the House" and that Mathews breached that duty. (Doc. 54-3 at 10.) AIC responds, noting that the condition precedent broadly includes "any claim for injury or damage based, *in whole or in part*, upon work performed by independent contractors," and therefore, since any hiring/training/supervision claim would be premised upon the work of the subcontractors, the condition precedent would still apply.

9

The Court agrees with AIC. The endorsement is clear and unambiguous, and it applies to the Thomases' claims against Mathews even to the extent that Mathews is being sued for negligent or wanton hiring, training, or supervision over the subcontractors, or the construction project in general. After all, even as Mathews acknowledges, all the work was performed by Mathews' subcontractors and a supervisory claim nevertheless is premised, in part, upon work performed by subcontractors. *See Probuilders Specialty Ins. Co. v. Phoenix Cont., Inc.*, No. 6:16-cv-601-AA, 2017 WL 11536056, at *3 (D. Or. Jan. 2, 2017) (finding "no textual ambiguity" because "[t]he endorsement label[ed] the three requirements as 'conditions precedent' to coverage for 'any claim' based 'in whole or in part' on the work of independent contractors."). In other words, the claim is dependent upon the actions of the subcontractors. The Court finds that the special condition endorsement is a condition precedent and because Mathews did not satisfy the special condition endorsement, the AIC policies do not provide Mathews a defense against the Thomases' claims. Accordingly, AIC's motion for summary judgment is due to be granted on this basis.

### B. Tract Housing Exclusion

There is another reason that AIC is not obligated to provide a defense to Mathews: the application of the CATT exclusion. The CATT exclusion applies to property damage "however caused, arising, directly or indirectly, out of, or related to" Mathews' or its subcontractors' work that is performed on or incorporated into a "tract housing project or development" which is defined as "any housing project or development that will exceed 25 total units when the project is completed and where the homes share many of the same characteristics including floor plan, design or lay-out." (Doc. 54-1 at 56; Form AIC 3011.)

Based on the plain language of the endorsement, the CATT exclusion applies. It is undisputed that Stone Park is a "development" that exceeded 25 total units, i.e.,

homes. In fact, Mathews constructed at least 118 of the homes in Stone Park. AIC has also shown that the homes in Stone Park "share many of the same characteristics" in that the homes were single-family residential, craftsman style, and were built based on three general sets of plans, with open floor plan concepts, three-to-five bedrooms, a two-car garage on the front, decks or patios, similar architectural features such as stone and hardie board, ply gem windows, weathered wood shingles, granite countertops, double stainless undermount kitchen sinks, similar paint colors, hardwood floors on the first floor and carpeting on the second floor, fireplaces, Whirlpool appliances, and gas water heaters. All of the homes were subject to Stone Park's covenants and restrictions and were subject to architectural review committee approval.

Faced with the obvious, Mathews offers one argument against application of the CATT exclusion. It argues the exclusion is ambiguous because it "can be interpreted in at least two possible ways" in that "it is unclear if this exclusion means (1) coverage is excluded if the insured built more than 25 houses in the neighborhood which share many of the same characteristics versus (2) coverage is excluded only if there are more than 25 houses in the neighborhood and <u>all</u> the homes in the neighborhood must share the same characteristics including floor plan, design or lay out." (Doc. 59 at 11; Doc 119 at 2.) Thus, according to Mathews, "the Court should construe the policy provision to the one outcome most favorable to the insured" which is the provision "that there must be more than 25 homes and all the homes in the neighborhood must share the same characteristics including floor plan, design or lay out." (*Id.*)

This is unconvincing, and the Court sees no ambiguity that renders the exclusion inapplicable under the facts presented here. It is true that ambiguity is resolved in favor of the policyholder, and exclusionary clauses are construed narrowly and strictly against the insurer. But here, the language in the CATT

11

exclusion is clear and unambiguous. The CATT exclusion denies a defense for any claim based on work that is performed on or incorporated into "any housing . . . development that will exceed 25 total units when the project is completed and where the homes share many of the same characteristics including floor plan, design or layout." It does not require Mathews to have built at least 25 homes with the exact same characteristics or that all the homes in Stone Park must share the exact same characteristics. Mathews' asserted ambiguity relies on a strained interpretation of the policy language and an interpretation that, even if true, does not render the provision inapplicable.

The tract housing exclusion applies. Stone Park is a development that contains over 400 single family homes. Mathews built over 100 of them. The homes, including those that Mathews built, in Stone Park share many of the same characteristics: among other things, they are single family residences built in a craftsman style with frontward facing garages and with only a handful of floor plans. Although it may be true that there are variations between the homes and that no two homes are exactly the same, the policy language does not require exact uniformity. The policy only requires that the homes share "many" of the same characteristics. The evidence presented here shows just that. Accordingly, the Court concludes that the CATT exclusion applies.

## V. CONCLUSION

For these reasons, it is **ORDERED** as follows:

1. Plaintiff Accident Insurance Co., Inc.'s Motion for Summary Judgment (Doc. 115) is **GRANTED**;

2. Plaintiff is not obligated to defend Defendant Mathews Development Company, LLC, or any other insured, for the claims currently made the basis of the Ruth and Edward Thomas lawsuit against Defendant Mathews Development Company, LLC under the insurance policies made the basis of this action;

      3.      To the extent Counts I and II of Plaintiff's Complaint for Declaratory Judgment (Doc. 1) remain, they are **DISMISSED without prejudice**;

      4.      Plaintiff's Motion to Strike (Doc. 130) is **DENIED as moot**;

      5.      A separate judgment will issue.

**DONE** on this the 5th day of February 2024.

_/s/ R. Austin Huffaker, Jr._
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE